ADONIJAH S. BOYD, complainant and respondent,

*v.*

CASPAR ENGELBRECHT et al., defendants and appellants.

As between the original parties to a usurious loan, the taint of usury attaches to the transaction and to all substituted obligations and securities, until the usurious element is expunged.

On appeal from a decree of the chancellor, based on the following opinion:

The mortgage which this suit was brought to foreclose was given in May, 1877, for $4,000, payable in three years, with interest at seven per cent. per annum. It is dated May 1st, 1877, and consequently came due May 1st, 1880. In the latter month, after the mortgage had matured, the complainant began a suit for foreclosure on it, which was settled between the parties in the same month and the bill dismissed, and an agreement was made between them that the time for payment of the mortgage

Boyd v. Engelbrecht.

should be extended for a year from May 1st, 1880; the rate of interest from that time (the interest was paid to that date) to be six instead of seven per cent. The bill in this suit was filed in June, 1881, after the expiration of that year. The defendants, by their answer, set up two defences; one, that the loan was made on a usurious agreement that the complainant should lend to the mortgagor $3,680, for three years, at a premium of $320, to be paid May 1st, 1880, and to be included in the mortgage, and interest at seven per cent. per annum, to be payable on the whole $4,000; the other that on the 30th of April, 1881, the complainant agreed, by parol with the defendants, to extend the time for payment of the mortgage for one year from that date.

As to the defence of usury: The burden of proof is on the defendants. Engelbrecht swears that it was agreed between him and the complainant that the latter would lend him, not $3,680, as stated in the answer, but $4,000, for three years, at a premium of eight per cent., besides interest at seven per cent. per annum; and that the complainant, on the giving of the mortgage, gave him his check for the $4,000, which he, Engelbrecht, endorsed, and they together went to the bank, and the complainant drew the money upon it, and retaining out of it $320, which he said was for his bonus, gave the rest to Engelbrecht. He also says that he thinks he then paid the complainant $15 for the expense of searches of the title to the property. The complainant positively and explicitly denies that there was any agreement between them for the payment of any premium for the loan; but says that it was understood between them that when the mortgagor received the money he was to pay the complainant a fair professional fee (the complainant is a lawyer) for his time expended in the examination of the title and for searches &c.; that on the delivery of the mortgage he gave the mortgagor his check for $4,000, the money for which the latter himself—the complainant not being present—drew out of the bank, and out of it paid him $300; that he thinks (but is not certain) that he gave the mortgagor at the time an itemized statement of his charges, adding thereto the amount of interest ($54.90), which he claimed had

accrued on the loan for the period, two months and twelve days, during which he says he had held the money uninvested in bank for the accommodation of the mortgagor. His charge for examining the title and making a map of the property, over and above moneys paid for official searches and fee for drawing the bond and mortgage, appears to have been $231.25, but owing to a mistake in the calculation he, in fact, received $230.25.

The mortgagor's testimony is not corroborated in any way. Nor, indeed, is that of the complainant. The testimony of the teller of the bank as to the person to whom the $4,000 check was paid, is not positive enough to be effective as contradiction of the one or corroboration of the other. A careful consideration of the evidence leads me to the conclusion that the complainant did not, as the mortgagor alleges and swears he did, receive $320 for premium, and that there was no agreement that he should receive that sum as premium. He did receive $300, of which all but $230.25 was for expenses connected with the search of the title, drawing the bond and mortgage, and interest on the money for the time he had held it on deposit in bank for the mortgagor between the time of making the loan and the time of giving the mortgage. There is evidence that he investigated the title, giving his personal attention to it, and employing a person in the business, for whose services, as for his own, no charge was made in the bill except as it was included in the charge of $231.25. He swears that the mortgagor was satisfied with the bill and paid it cheerfully. The proof of the defence rests entirely on the testimony of the mortgagor, and, as before stated, it is not corroborated in any way. It is flatly contradicted in every material respect by that of the complainant. If it be suggested that the large amount of the charge made by the complainant for his fee for examining the title &c., is evidence of a usurious contract, the sufficient answer is that the mortgagor does not say that the understanding was that that charge was to be a cover for the premium. He was called to testify in rebuttal, and swore that the complainant never told him that he charged $320 for his and his assistant's services in

Boyd v. Engelbrecht.

searching the title, and repeated his statement that that sum was retained by the complainant for bonus. The complainant, however, had not said that he told the mortgagor that the sum of $320 was for compensation for searching the title, but he had said that he had told him that he charged him $231.25 for that work, the complainant had absolutely and unequivocally denied that and he had received $320 on any account, but testified that the amount he received was but $300. The defence of usury is not proved. Nor is the defence that the complainant agreed to extend the time for payment of the mortgage for one year from April 30th, 1881, established. There will be a decree for complainant for the amount due on the mortgage.

*Mr. G. Collins*, for appellants.

*Mr. S. B. Ransom*, for respondent.

The opinion of the court was delivered by

Dixon, J.

The bill is filed to foreclose a bond and mortgage, given by the defendant to the complainant May 1st, 1877, for the payment of $4,000 in three years, with interest semi-annually, at seven per cent. per annum.

The answer avers that these instruments were given upon a usurious agreement for the loan of $3,680, being $4,000, less eight per cent., which the mortgagee was to retain as a bonus.

The defendant's evidence is to the same effect as his answer.

The complainant admits that he received $300 out of the $4,000 loaned, and says that it was paid to him for two months and twelve days' interest, while the money lay idle in bank, before May 1st, 1877, for the expenses of drawing papers and making the search of title, and for his own services (he being a lawyer) in aid of the search.

The proof shows that the search and abstract were made, and the papers drawn by a third person, to whom the complainant

paid therefor $10; that the other expenses of search amounted to about $5; and that the defendant paid the complainant $15 to meet these outlays, besides the $300 or $320 already mentioned. The alleged interest was $54.90; so that there remained, according to the complainant, for his services, about $255. These services appear to have consisted of two or three visits in an office near his own, in order that he might make some inquiries from the son of a former owner of the mortgaged premises. He says that the defendant paid him this compensation, without objection, as a "fair professional fee." We are not able to believe this assertion. We think it manifest that what he received or retained, he got as a usurious bonus for the loan. Under the circumstances, we regard the amount as most reliably ascertained by the answer and evidence of the defendant. The bond and mortgage must, therefore, be treated as usurious securities for the loan of $3,680.

The deféndant has paid three years' interest at seven per cent. on $4,000, being $840, and one year's interest at six per cent. on $4,000, being $240; in all, $1,080. The four years' interest at these rates, on the true principal, $3,680, would be $993.60. The difference, $86.40, was illegal interest, which the statute requires to be deducted from the amount actually lent. The balance, $3,593.60, without interest, is the sum due on the bond.

In May, 1880, six months' interest being apparently in arrear, the complainant filed a bill to foreclose the mortgage, incurring costs, he says, to the amount of $46.53. In a few days the defendant paid up the interest, and thereupon the complainant discontinued his suit, without requiring payment of the costs, and agreed to reduce the rate of interest to six per cent. and extend the time for paying the principal one year. The complainant claims that this arrangement purged the bond of usury. But it is settled that, as between the parties to a usurious loan, the original taint attaches to the transaction, and all substituted obligations or securities, however remote, until the usurious element is expunged. *Taylor* v. *Morris, 7 C. E. Gr. 606.* Forgiving a debt of $46.53, and consenting to demand six per cent. interest

instead of seven per cent., when no interest whatever is due, cannot expunge the vice of exacting usury to the amount of $320.

The defendant contends that in May, 1881, in consideration of his paying interest for the preceding six months, the complainant agreed to extend the time of payment of the principal for another year, and that the present suit, begun immediately after this payment of interest, is, therefore, premature.

We do not think that the evidence establishes such a contract.

Our conclusion is that the decree of the chancellor, giving the mortgagee principal, interest and costs, must be reversed, with costs, and the record remitted, with directions to enter a decree for the complainant for $3,593.60, without costs in the court below.

*Decree unanimously reversed.*